1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD DEWAYNE BASSETT,                No.  2:15-cv-0304 KJN P

12                    Petitioner,

13        v.                                 ORDER

14   J. MACOMBER,

15                    Respondent.

16

17   I.  Introduction

18        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner contends that he received ineffective

20   assistance of counsel during the plea-negotiation stage of his criminal proceedings in the Lassen

21   County Superior Court.  Both parties consented to proceed before the undersigned for all

22   purposes.  See 28 U.S.C. § 636(c).  After careful review of the record, this court concludes that

23   the petition should be denied.

24   II.  Procedural History

25        On November 27, 2012, a jury found petitioner guilty of count one, threatening a public

26   official in violation of California Penal Code § 76(a), and count two, making a criminal threat in

27   violation of California Penal Code § 422.  (Clerk's Transcript ("CT") at 105.)  On January 13,

28   2013, petitioner was sentenced to 25 years-to-life in state prison.  (CT at 94.)  On February 21,

2013, petitioner was re-sentenced to a three strikes sentence of 25 years-to-life on both counts, but stayed the sentence on the criminal threat (count II) pursuant to California Penal Code § 654. (CT 103.)

On January 24, 2013, petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. (LD 2 at 1.)

On May 17, 2013, while his appeal was pending, petitioner filed a petition for writ of habeas corpus in the Lassen County Superior Court, alleging that defense counsel was ineffective at the plea stage of the proceedings. (LD 7.)

On February 18, 2014, the Court of Appeal remanded for resentencing on count one, threat against a public official, because such conviction was not listed as a violent or serious felony under California's newly reformed three strikes sentencing law, and affirmed the conviction in all other respects. (Respondent's Lodged Documents ("LD") 4.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on April 23, 2014. (LD 6.)

On June 5, 2014, the Lassen County Superior Court conducted an evidentiary hearing on the petition for writ of habeas corpus. (LD 11.) The clerk's minutes reflect that the court found that defense counsel did not make any misleading promises to petitioner regarding the outcome of the case, and did not find that petitioner received ineffective assistance of counsel. (LD 12.) On June 13, 2014, the superior court summarily denied the petition. (LD 13.)

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal on July 30, 2014, which was summarily denied on August 7, 2014. (LD 14-15.)

On August 21, 2014, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (LD 16.) The California Supreme Court denied the petition without comment on January 14, 2015. (LD 17.)

The instant petition was filed on February 5, 2015. (ECF No. 1.)

////

////

////

III. Facts[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

### FACTUAL AND PROCEDURAL BACKGROUND

In 2008, a deputy district attorney (the prosecutor) prosecuted defendant for forcible rape, kidnapping, and robbery. In January of 2009, defendant pleaded guilty and received a 40-year state prison sentence.

While incarcerated, defendant wrote and mailed two letters to the prosecutor. The second letter comprises the two threat offenses at issue here, but both letters comprise evidence of those offenses.

### Letter 1

In October 2009, while serving his sentence in High Desert State Prison in Lassen County, defendant authored a letter in which he threatened to kill the prosecutor (the letter's addressee) and the rape victim. Prison officials intercepted the handwritten letter before it reached the prosecutor.

In this letter, defendant claimed affiliation with the "Northern Rider" gang and threatened that he or his "[h]ome boys" would "[f]ind [the prosecutor] and kill [her]." Defendant wrote that his "Northern Rider Homies" were looking for his rape victim and would kill her as well.

Investigators interviewed defendant shortly after prison officials intercepted the letter. When asked if receiving a letter such as this would cause defendant fear, he responded, "Of course."

Defendant also told investigators that he identified as a Northern Rider gang member and lived in the same prison building as seven Northern Rider gang members. Defendant has a web tattoo on his hand that indicates he is a Northern Rider gang member.

As a result of this letter, defendant pleaded guilty to violating section 422 -- making a criminal threat -- and was sentenced to six additional years in prison. (This § 422 conviction is distinct from the § 422 conviction at issue on appeal here.)

////

////

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Bassett, No. C073005 (February 18, 2014), a copy of which was lodged by respondent as Lodged Document 4 on May 13, 2015.

Letter 2

In August of 2011, defendant wrote a second letter addressed to the prosecutor.  This time, the prosecutor received the letter.  As noted, it is this letter that comprises the two offenses on appeal here.  That letter read in full:

"Dear [Prosecutor],"Hello, there hope you arnt doing to much work, as you know you have taken my whole life from me for a fuck up, but you give child molesters a get out of jail free card on so many occaisions you bitch.  You and that bitch will be killed by me you are not safe I will get you and your family and tell [ (rape victim's first name) ] she can hide down south but I got her dumb ass dads address ha, ha.  I will get the chance to kill you both in time, I dont need someone else to do it for me. I will do every thing to kill you both bitch fuck you.  Now you have placed [ (rape victim's) ] ex-roommate in danger, I have someone watching her you guys are going to die a bad death.  Take care while you can.

"Sincerely,

"Richard Bassett"[FN2]

>[FN2:  The letter was originally written in all capital letters. All typographical errors are part of the original, handwritten letter.]

Upon reading the letter, the prosecutor felt upset and frightened.  In her 20 years as a prosecutor, she had never received a written death threat.

Based on their prior history, the prosecutor knew defendant to be a "dangerous," "loose cannon" with an "extensive criminal history" who fixated on killing her.  The prosecutor was aware that defendant associated with the "Northern Riders" because of the first letter.  As a result, the prosecutor changed her daily routine to be "more aware of [her] surroundings."  The prosecutor installed an alarm system in her home and limited her professional and personal evening activities.

People v. Bassett, No. C073005, 2014 WL 659815, at *1-2 (Cal. Ct. App. Feb. 18, 2014), review denied (Apr. 23, 2014).

IV.  Relevant Portion of State Appellate Court Opinion

The Lassen County Superior Court judge liberally referred to portions of the state appellate court's opinion on direct appeal in reaching his findings on petitioner's ineffective assistance of counsel claim.  The undersigned includes portions of the opinion on direct appeal below, which also includes an explanation of the elements required for California Penal Code Sections 76 and 422:

4

# I. Sufficiency of the Evidence

Defendant contends the evidence is insufficient to sustain the convictions of making a criminal threat (§ 422) and making a threat against a public official (§ 76). Defendant challenges the section 422 conviction on the basis that his lengthy prison sentence prevents "an *immediate* prospect of execution of the threat." (§ 422, subd. (a), italics added.) Similarly, defendant challenges the section 76 conviction on the basis that he lacked the " '*[a]pparent ability* to carry out [the] threat' " because of his prison sentence. (§ 76, subd. (c)(1), italics added.) Discussing these two arguments in turn, we disagree.

In reviewing the sufficiency of the evidence, we review "the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (People v. Kipp (2001) 26 Cal.4th 1100, 1128.) This standard of review is not altered where the People rely primarily on circumstantial evidence. (People v. Bloyd (1987) 43 Cal.3d 333, 346-347.)

## A. Section 422: Criminal Threat

Section 422 requires the prosecution to prove five elements: "(1) [T]hat the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) *that the threat . . . was 'on its face and under the circumstances in which it [was ] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,'* (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (People v. Toledo (2001) 26 Cal.4th 221, 227-228, italics added (Toledo); § 422, subd. (a).)

The fundamental question here is whether defendant's lengthy prison sentence forecloses " 'an immediate prospect of execution of the [criminal] threat.' " (Toledo, supra, 26 Cal.4th at p. 228; § 422, subd. (a).)

1. Cases involving threats made in custodial situations.

A sampling of relevant cases illustrates when the immediacy element in section 422 is satisfied.

In People v. Mosley (2007) 155 Cal.App.4th 313 (Mosley ), the defendant, an inmate, told one correctional officer that he planned to obtain the officer's contact information from the Department of Motor Vehicles by using a telephone in a courthouse lockup facility, and then pass that information to his gang affiliates so they

could kill the officer and rape his wife. (Id. at pp. 316–318.) The defendant bragged about the murder of an officer in a nearby correctional facility, claiming that his gang associates were responsible. (Id. at pp. 315-321.) Officers also repeatedly found the defendant in possession of weapons in his cell. (Ibid.) The defendant argued that the immediacy element was not present because he was an inmate in a segregation module, which constricted his movement. (Id. at p. 324.) The court rejected this argument, finding there was substantial evidence in light of the defendant's ability to obtain weapons as well as his gang connections. (Ibid.)

In People v. Gaut (2002) 95 Cal.App.4th 1425, a defendant in the county jail routinely called his former girlfriend and left messages threatening to kill her. (Id. at p. 1429.) The girlfriend feared that the defendant would send someone to her home to harm her because the defendant said, "Somebody gone [sic ] come see you." (Id. at pp. 1429, 1432.) The defendant contended the evidence was insufficient because he was incarcerated at the time of the threat and therefore unable to carry it out. (Id. at p. 1431.) The court disagreed and held that the surrounding circumstances, including the defendant's violent history with his former girlfriend, supported the judgment. (Id. at pp. 1431-1432.)

In People v. Wilson (2010) 186 Cal.App.4th 789 (Wilson), the defendant, a prisoner at a correctional institution, threatened several correctional officers that he would " 'blast' " them upon his parole-scheduled release from prison in 10 months. (Id. at p. 795.) Defendant claimed to have a history of finding and killing officers. (Id. at pp. 815-816.) In contrast to Mosley, in Wilson the defendant did not have outside contacts, access to weapons, or the ability to carry out the threat at that exact moment; nevertheless, the criminal threat was supported by substantial evidence because the appellate court considered all of the surrounding circumstances and concluded that defendant "effectively made an appointment to kill [the officer] at his earliest possible opportunity." (Wilson, at p. 814.)

**2. Analysis.**

In this case, defendant contends there was "no immediacy to the [criminal] threat" because he was serving a lengthy sentence in prison when the prosecutor received the second letter.

Defendant emphasizes that he could not independently carry out the threat. But defendant neglects the significance of his gang connections and prior threats against the prosecutor. As explained in People v. Mendoza (1997) 59 Cal.App.4th 1333 (Mendoza), "[T]he determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific [as to convey] to the victim an immediacy of purpose and immediate prospect of execution of the threat *can be based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances." (Id.*

at p. 1340, italics added [considering gang membership and the defendant and victim's prior relationship to evaluate the sufficiency of the evidence].)

Here, defendant mailed his first threatening letter to the prosecutor on October 21, 2009.3 In this letter, defendant threatened that his "[h]ome boys" would "find [the prosecutor], kill [her], and burn [her] house down." Defendant also wrote that his "Northern Rider Homies are looking for [the named rape victim]" and defendant would "kill her as well." The prosecutor did not receive this letter because prison officers intercepted it; however, the district attorney later informed the prosecutor of defendant's threats and provided her a copy of the letter. Therefore, the prosecutor was well informed of defendant's gang affiliations when she received the second letter.

Considering the prosecutor's knowledge of defendant's gang affiliations, it is reasonable that the second letter "conveyed to [the prosecutor] an immediacy of purpose and immediate prospect of execution of the threat . . . *based on all the surrounding circumstances.*" (Mendoza, *supra*, 59 Cal.App.4th at p. 1340, italics added.) The second letter informed the prosecutor that she "[was] not safe," defendant would "do everything to kill [her]," and defendant had "someone [else] watching" his rape victim's former roommate.

Although the second letter did not explicitly mention "Northern Rider Homies," defendant stated he had someone outside of prison "watching" the rape victim's former roommate. The prosecutor testified that prison gang members often exchange "favors" and that members "associate[ ] with people who are coming and going [from prison] all the time." Cryptic phrases, such as "I will do everything to kill you both," create the reasonable inference that defendant would implore gang members on the outside to effectuate the threat against the prosecutor. Based on the surrounding circumstances -- the language of the first and second letters and defendant's gang connections -- the jury could readily infer there was "an immediate prospect of execution of the threat." (§ 422, subd. (a).)

Defendant relies on Wilson, *supra*, 186 Cal.App.4th 789 to assert that 10 months in incarceration is the "longest delay [recognized in case law] in the expectation that a threat will be carried out." Wilson does not stand for this blanket rule. While the Wilson court highlighted that the defendant there was not serving a lengthy or indeterminate term, the court clarified that section 422 does not place a "limited timeline" on when a specific threat must be executed. (Wilson, at p. 816.) Furthermore, Wilson is distinguishable because there was no evidence the defendant there had outside contacts, whereas such evidence exists here. Because of defendant's outside contacts here, this case is analogous to Mosley, in which the surrounding circumstances of outside gang connections constituted substantial evidence of a criminal threat. (Mosley, *supra*, 155 Cal.App.4th at pp. 325-326.)

////

## B. Section 76: Threatening a Public Official

Defendant next claims there is insufficient evidence to support his section 76 conviction -- threatening a public official. Specifically, defendant argues that he did not have the "apparent ability" to carry out the threat because of his lengthy incarceration. We disagree.

Section 76, subdivision (a) provides, as pertinent, "Every person who knowingly and willfully threatens the life of, or threatens serious bodily harm to, . . . the staff of any elected public official, . . . with the specific intent that the statement is to be taken as a threat, *and the apparent ability to carry out that threat by any means,* is guilty of [threatening a public official]." (§ 76, subd. (a), italics added.) The statute further defines "apparent ability" as "includ[ing] the ability to fulfill the threat at some future date when the person making the threat is an incarcerated prisoner with a stated release date." (§ 76, subd. (c)(1).)

To ensure that only true threats are criminalized and not free speech, the section 76 statutory requirements of specific intent and apparent ability have been judicially interpreted as proscribing only those threats " ' so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution.' " (People v. Gudger (1994) 29 Cal.App.4th 310, 320-321 (Gudger), quoting United States v. Kelner (2d Cir. 1976) 534 F.2d 1020, 1027 (Kelner); see also Watts v. United States (1969) 394 U.S. 705, 708 [22 L.Ed.2d 664, 667] [distinguishing political hyperbole from a true threat within the meaning of a federal statute].)

The Legislature has codified this constitutionally required language in section 422, but has not similarly amended section 76. (§§ 76, 422 [added by Stats. 1988, ch. 1256, § 4, pp. 4184-4185, as amended by Stats. 1989, ch. 1135, § 1, pp. 4195-4196].) Despite this statutory gap, section 76 "must likewise incorporate such unconditional language to pass constitutional muster." (Gudger, *supra*, 29 Cal.App.4th at p. 320.)

Here, the record reflects sufficient evidence of defendant's "apparent ability" to carry out the threat, as that term has been judicially interpreted. Defendant had a specific release date -- although the date was not specified -- and the ability to fulfill the threat because of his gang connections. Having just expounded the evidence relating to defendant's gang affiliations, previous threats, and immediacy, it is unnecessary to recite it again here.

Furthermore, defendant contends there is no published case relevant to the facts at hand. He is wrong. In People v. Avila (2013) 212 Cal.App.4th 819 (Avila), filed six months before defendant's opening brief, an incarcerated defendant threatened six deputy district attorneys. Defendant had no parole date, yet the court held that a defendant need not have a parole date to have the " 'apparent ability to carry out that threat' " within the meaning of section 76. (Avila, at p. 822; § 76, subd. (a).)

The Avila court considered whether an incarcerated prisoner who has no parole date but a "cohort outside of prison who is willing to carry out threats on his or her behalf" has the apparent ability to carry out the threat, and concluded such a defendant does have the apparent ability to effectuate the threat. (Avila, supra, 212 Cal.App.4th at pp. 827-828.) Here, defendant had a parole date, though in the distant future, and a cohort who could act on his behalf; therefore, there is sufficient evidence that defendant had the apparent ability to carry out the threat. To hold otherwise would cause an absurd result -- categorical immunity for defendants who make criminal threats but are serving long or indeterminate sentences. (Avila, at pp. 827-828.)

## II. Attempted Criminal Threat and Attempted Threat Against a Public Official

Defendant contends the trial court erred in not instructing the jury *sua sponte* (on its own motion) on the lesser included offenses of attempted criminal threat and, similarly, attempted threat against a public official. We find no error.

A trial court has a *sua sponte* duty to give instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present. (People v. Breverman (1998) 19 Cal.4th 142, 154-155.) But, this requirement is limited. "[T]he existence of 'any evidence, no matter how weak[,]' will not justify instructions on a lesser included offense. . . ." (Id. at p. 162.) A lesser included offense instruction is warranted only if substantial evidence exists from which a reasonable jury could conclude " 'that the lesser offense, but not the greater, was committed.' " (People v. Avila (2009) 46 Cal.4th 680, 704-705, quoting People v. Cruz (2008) 44 Cal.4th 636, 664.)

Our state Supreme Court concluded, in Toledo, supra, 26 Cal.4th at page 231, that attempted criminal threat is a lesser included offense of criminal threat. The offense of attempted criminal threat occurs when a defendant acts with the requisite intent, but fortuity prevents the defendant from completing the criminal threat. (Ibid.) The high court provided three examples of attempted criminal threats: (1) Defendant completes a written threat, but the written threat is intercepted before delivery to the threatened person; (2) defendant makes a sufficient oral threat, but for some reason the threatened person does not understand the threat; and (3) defendant makes a sufficient threat that is received and understood by the threatened person, but the threatened person is not actually in sustained fear for his or her safety. (Ibid.)

The record does not demonstrate that fortuity prevented defendant's completed criminal threat here. Defendant intended to scare the prosecutor, who received the written threat, understood it, and was in sustained, reasonable fear for her safety. The prosecutor's testimony that the second letter made her "much more aware of [her] surroundings" and "frightened [her]" demonstrates that the threat was not an attempt because the prosecutor was reasonably in sustained fear for her own safety, as required by section 422.

Applying similar logic, the crime of attempted threat against a public official is not present here either -- the prosecutor reasonably feared for her safety, as required by section 76. Consequently, the trial court did not err in failing to instruct on attempted threats -- this is not a <u>Toledo</u> attempt of an intervening fortuity (<u>Toledo</u>, *supra*, 26 Cal.4th at p. 231), and the jury, on the evidence here, could not have found the lesser attempt without also finding the greater completed offense (<u>People v. Avila</u>, *supra*, 46 Cal.4th at pp. 704-705; <u>People v. Cruz</u>, *supra*, 44 Cal.4th at p. 664).

Instead, defendant is simply raising his sufficiency of evidence argument again in the guise of this instruction argument. In addition to the "immediacy" and "apparent ability" elements, defendant challenges the sufficiency of the evidence as to the "'reasonableness' of [the prosecutor's] fear" and the "actuality" of her fear. We have previously found sufficient evidence of immediacy and apparent ability. Based on the prosecutor's knowledge of defendant's gang involvement, prior violent acts, and direct threats, a jury could find that her fear was reasonable, actual, and sustained.

In any event, the purported instructional errors here were harmless because the jury was instructed on the supposedly lacking elements comprising defendant's attempt theory (immediacy, apparent ability, reasonable fear, actual fear), and found all these elements beyond a reasonable doubt.

<u>People v. Bassett</u>, No. C073005, 2014 WL 659815, at *2-6 (Cal. Ct. App. Feb. 18, 2014)

V. <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S. 1, 4 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1
2              (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
               State court proceeding.

3    28 U.S.C. § 2254(d).

4           For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

5    holdings of the United States Supreme Court at the time of the last reasoned state court decision.

6    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

7    38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529

8    U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is

9    clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

10   859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent

11   may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

12   specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 569 U.S.

13   58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it

14   be used to "determine whether a particular rule of law is so widely accepted among the Federal

15   Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further,

16   where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is

17   "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77

18   (2006).

19          A state court decision is "contrary to" clearly established federal law if it applies a rule

20   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

21   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

22   "[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court

23   that adjudicated the claim on the merits."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

24          Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

25   grant the writ if the state court identifies the correct governing legal principle from the Supreme

26   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2]

27   _____

28   [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

                                              11

Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 102.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any reasonable basis for the state court to deny relief. Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

////

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

VI. Petitioner's Ineffective Assistance of Counsel Claim

A. Parties' Arguments

Petitioner asserts that defense counsel was ineffective during plea negotiations. Specifically, petitioner argues that in November of 2012, before trial, defense counsel explained that before petitioner takes the eight year plea offer, he should remember what defense counsel argued at the preliminary hearing, that petitioner had no apparent ability to carry out a threat and there was not an immediate prospect to carry out the threat. (ECF No. 1 at 5.) Petitioner states he was told these elements were needed to convict, so petitioner, based on defense counsel's advice, turned down the eight year plea offer. Further, petitioner contends that defense counsel then threw petitioner under the bus by not arguing during the jury trial what defense counsel had argued during the preliminary hearing. Petitioner contends that he found out during jury instructions that there doesn't need to be an ability to carry out the threat or an immediate prospect to carry out the threat to support a conviction for criminal threats. (ECF No. 1 at 5.) Petitioner contends that if he had been fully and competently informed by counsel, he would have taken the plea offer and not gone to trial.

Moreover, petitioner contends that during the evidentiary hearing in state court, his attorney failed to convey petitioner's claims that his decision to go to trial was because he was under the misunderstanding that these two elements of the crime were needed for conviction, not because counsel told petitioner to go to trial. (ECF No. 1 at 6.) Petitioner argues that the preliminary hearing arguments could not have clarified the required elements because the prosecution and defense counsel argued opposite positions on the law.

Petitioner maintains that had defense counsel properly advised petitioner, he would have taken the eight year plea offer and would not be subject to the 25 year-to-life sentence.

////

In opposition, respondent argues that the state court explicitly found that defense counsel's representation was "quite competent" and "darn good." (ECF No. 15 at 14, citing LD 11 at 46.) Respondent contends that petitioner fails to demonstrate that the Lassen County Superior Court's ruling was inconsistent with clearly established Supreme Court precedent. Respondent argues that the superior court, after extensively detailing California cases, reasonably deferred to counsel's tactical decision to attack the "immediate prospect" and "apparent ability" elements in the charges because California law was unclear whether, at the time of petitioner's trial, defendants serving lengthy prison terms were capable of making threats that could result in the victim fearing an immediate prospect that the threat would be executed. (Id.) Respondent contends that petitioner's disagreement with how counsel opted to argue the defense does not establish constitutional ineffectiveness. (Id.)

Further, respondent contends that the superior court found that defense counsel did not advise petitioner that the prosecutor could not prove "apparent ability" and "immediate prospect," and reasonably rejected petitioner's claim because petitioner failed to persuasively prove up its basis. Respondent argues that because the superior court reasonably concluded petitioner was not promised that he would win at trial, there was no logical basis for finding that the decision to not accept the plea offer was based on incompetent counsel. (ECF No. 15 at 15.) Respondent contends that the superior court credited defense counsel's testimony that he had extensive discussions with petitioner, including the elements of the charges and potential defenses, and the pros and cons of proceeding to trial. (ECF No. 15 at 15.) Because petitioner's second letter warned he would personally carry out his threats, defense counsel explained that attacking the "apparent ability" and "immediate prospect" elements of the charges could be a promising strategy, and testified that petitioner was particularly pleased with how this argument was presented at the preliminary hearing. (Id.) Despite these discussions, respondent argues that defense counsel made clear that he never advised that the prosecutor could not prove the elements of the charges and made no promises of a successful defense at trial. (Id., citing LD at 29, 31.) Based on defense counsel's testimony, respondent contends that the superior court reasonably credited counsel's testimony over petitioner's contrary assertions. (ECF No. 15 at 15.)

In reply, petitioner argues that he was informed by defense counsel that "immediate prospect" and "apparent ability" were the elements of the charged offense, but that when the jury was instructed by the trial judge, petitioner learned that they were not elements of the offense. Petitioner contends that had he known these points were not elements of the offense, he would not have gone to trial, but would have taken the plea offer. (ECF No. 17 at 2.) Although petitioner concedes he was not promised anything, and that he chose to go to trial, he argues that it was the advice from counsel that made petitioner decide to go to trial, and that if he had been properly advised as to the elements, he would have taken the plea offer. (ECF No. 17 at 3.)

B. State Court Rejection

The superior court held an evidentiary hearing on petitioner's ineffective assistance of counsel claim, at which both petitioner and defense counsel testified. The superior court denied petitioner's claim, and provided the reasoning from the bench:

> [A]fter weighing the testimony here, [defense counsel] did not tell [petitioner] that the prosecution could not prove an element as to each of the charged offenses. . . and made no representation as to the outcome or make any promises to winning the case or not.
>
> With regard to the decision [petitioner] made, my conclusion factually is that he did in fact make his decision and it was . . . an informed decision. And that leads us into the nub about [defense counsel] was doing his job and arriving at the best theory one could arrive at to defend the charges and that does go to what we've been talking about tangentially here all along is it reasonable to be in fear when the person has threatened you is spending years and years and years into the future and I would suggest to you that the law was not settled at the time of trial, and I'm taking that frankly straight out of the Justice Butts' opinion in the case. It went on for several pages addressing the issue because counsel for [petitioner] on appeal made the same arguments and it's interesting, we start at page 4 of the decision from the third district in the case, discussing sufficiency of evidence, criminal threat, particularly folks seen in element number three that the threat was on its face and the circumstances to which it was made so unequivocal, unconditional, immediate and specific as to convey to the person threatened gravity of purpose and immediate prospect of execution of the threat.
>
> And going on, was addressing the <u>People versus Toledo</u> decision from 2001 that had addressed whether a defendant is serving a lengthy prison sentence and makes a threat forecloses an immediate prospect of execution of that threat.

////

That's back in 2001, but it left questions unanswered and . . . then we go on with . . . the discussion of People versus Mosley which is a 2007 case; Gout, 2002; People versus Wilson, 2010, and then of interest . . . . Considered . . . at some length here, People versus Avila decided in 2013, filed after the trial in [petitioner's] case, so I would suggest in terms of a competent approach to a defense, [defense counsel] was being quite competent. He focused on the two primary aspects related to elements of these crimes when the person being prosecuted is in fact serving a lengthy prison term and . . . to say that it wasn't competent for him to do so, and of course he shared -- and you didn't make any promises, he conveyed the offers. I think that [petitioner's] decisions were [petitioner's] decisions and in this aspect, you look at [petitioner], even today express some disappointment at what he felt was [defense counsel] forcing him or strong arming him into taking an offer on the prior 422 case which is CH027650.

So given that circumstance, the representation was darn good and it isn't a defense attorney's job to force their client to take a deal. Anybody that's been in this business for any length of time knows that they're probably one of the greatest frustrations that counsel engaging in criminal defense work have is that they know a good deal when they see it, but since the decision belongs to their client, it's frustrating when they see somebody make a bad decision and they know it's a bad decision, but that's the right of the person to do.

In any event, the Court doesn't find that [petitioner] received ineffective assistance of counsel, does not find that he was inappropriately deterred from accepting a post preliminary hearing offer or a pre-preliminary hearing offer for that matter nor was he encouraged to go to trial on any false hopes . . . because there were none stated. The fact is that [defense counsel] made the best legal argument and a plausible legal argument as we can see from the fact that the law was changing on this point clear up and after the trial in this case of [petitioner].

So with those observations, the Court does find that the evidence does not support the allegations of the petition and the petition is denied.

(LD 11 at 45-47.)[3]

C. Standards to Establish Ineffective Assistance of Counsel

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of

_____

[3] Following the superior court's summary denial, both the appellate court and the California Supreme Court issued summary denials. (LD 15, 17.) Therefore, the superior court's findings and decision constitute the last reasoned decision for AEDPA purposes.

reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  The relevant question under the Antiterrorism and Effective Death Penalty Act ("AEDPA") "is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.  Richter, 562 U.S. at 105.  When evaluating counsel's performance under the first step of Strickland, federal courts must apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

The Strickland standards apply to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process.  Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566 U.S. 156 (2012).  "A defendant has the right to make a reasonably informed decision whether to accept a plea offer."  Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted).  Trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision.  Id. at 881.  "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel."  United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir. 1981)).  The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).

18

1    This court must review for objective unreasonableness the state court's conclusions as to whether

2    counsel's performance was deficient or resulted in prejudice.  Weaver v. Palmateer, 455 F.3d 958,

3    965 n.9 (9th Cir. 2006) (citing Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004)).  The state

4    court's underlying factual determinations are reviewed for unreasonableness in light of the record

5    evidence.  Id.

6         In order to show prejudice in the context of plea offers, "a defendant must show the

7    outcome of the plea process would have been different with competent advice."  Lafler, 566 U.S.

8    at 163.  In cases where trial counsel's defective advice caused the defendant to reject a plea offer

9    and proceed to trial, prejudice is demonstrated where "but for the ineffective advice of counsel

10   there is a reasonable probability that the plea offer would have been presented to the court (i.e.,

11   that the defendant would have accepted the plea and the prosecution would not have withdrawn it

12   in light of intervening circumstances), that the court would have accepted its terms, and that the

13   conviction or sentence, or both, under the offer's terms would have been less severe than under

14   the judgment and sentence that in fact were imposed."  Id. at 164.

15        D. Discussion

16        In the instant petition, petitioner does not dispute that he personally made the decision to

17   proceed to trial, was aware he faced a 25 year-to-life sentence if he did not accept the plea offer,

18   does not contend that defense counsel failed to meet with him, or refute that defense counsel had

19   extensive discussions with petitioner, including an explanation of the elements.  Rather, petitioner

20   disputes how defense counsel articulated the elements of the criminal offense, and claims that

21   because he was misadvised, he chose to go to trial rather than accept the eight year plea offer.

22   However, petitioner's statements, standing alone, do not constitute clear and convincing evidence

23   to rebut the presumption of correctness that applies to the superior court's factual findings

24   regarding defense counsel's conduct during the plea negotiations.  See 28 U.S.C. § 2254(e)(1).

25   Petitioner's statements, made after the verdict, do not undermine defense counsel's advice or its

26   reasonableness under the circumstances.

27        Moreover, because the state court conducted an evidentiary hearing at which petitioner

28   testified, this court is required to defer to the state court's credibility findings.  See

Sophanthavong v. Palmateer, 378 F.3d 859, 867 (9th Cir. 2004) ("[B]ecause the state court conducted an evidentiary hearing . . . , we are required to defer to the state court's credibility findings."); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas corpus courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state court, but not by them.").

Here, during the post-conviction evidentiary hearing, the superior court judge observed both petitioner and defense counsel testify. During such hearing, petitioner testified that at the preliminary hearing, he understood that his defenses were "that there was no apparent ability and that there had to be apparent ability and there had to be immediate prospects to be carried out." (ECF No. 11 at 8.) Petitioner rejected the plea offer because defense counsel said there was no apparent ability to carry out the threat and no immediate prospect that the threat could be carried out. (Id.) Petitioner claimed it was not until trial that he learned these concepts were not required elements of the crime, and testified that if he had known otherwise, he would have taken the plea offer. (ECF No. 11 at 11.) But petitioner conceded that defense counsel discussed the elements of §§ 72 and 422 in connection with the first criminal threats case, and confirmed counsel went over again the elements of §§ 72 and 422 in this case. (ECF No. 11 at 17, 19.)

Defense counsel testified that he went over with petitioner the elements of the crimes in detail. (LD 11 at 27.) He had a thorough discussion of all the elements with petitioner, including the pros and cons, and gave petitioner "a copy of the Cal. Crim's well before trial." (LD 11 at 28.) Defense counsel recalled going over the elements of the two crimes charged, the facts and the law, with petitioner prior to jury trial, and never told petitioner he could win at trial. (LD 11 at 25, 29, 33.) Defense counsel did not tell petitioner that the prosecutor could not prove the elements of the charges, or that petitioner "was guaranteed a certain outcome." (ECF No. 11 at 29, 31.) In addition, defense counsel "never suggested to [petitioner] to go to trial, it was entirely his decision." (ECF No. 11 at 31.) Ultimately, petitioner made the decision to go to trial. (ECF No. 11 at 29.)

After weighing their testimony, the court found that defense counsel did not tell petitioner that the prosecution could not prove an element as to each of the charged offenses, and defense

counsel made no representation as to the outcome or make any promises to winning the case or not. (LD 11 at 45.) The court also found petitioner made the decision to proceed to trial, and that it was an informed decision. (Id.) Indeed, during cross-examination, petitioner's credibility was impeached by the special prosecuting attorney. (ECF No. 11 at 11-17.) On habeas corpus review, this court may not "re-determine credibility of witnesses whose demeanor has been observed by the state trial court." Aiken v. Blodgett, 921 F.2d 214, 217 (9th Cir. 1990) (citing Marshall v. Lonberger, 459 U.S. at 434).

Further, "under AEDPA, 'a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.'" Sophanthavong, 378 F.3d at 868, quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Following review of the evidentiary hearing testimony, the undersigned finds that the superior court's determination was not objectively unreasonable. Defense counsel's testimony supports the superior court's finding that defense counsel "was being quite competent. He focused on the two primary aspects related to elements of these crimes when the person being prosecuted is in fact serving a lengthy prison term. . . ." (LD 11 at 46.) Moreover, the state court judge observed that petitioner's decisions were his decisions in this respect, noting petitioner's still present

> disappointment at what he felt was [defense counsel] forcing [petitioner] or strong arming him into taking an offer on the prior 422 case which is CH027650. [¶] So given that circumstance, the representation was darn good and it isn't a defense attorney's job to force their client to take a deal.

(LD 11 at 46.) Indeed, in the instant petition, petitioner still maintains that defense counsel "pressured" petitioner to take the plea offered in the first threats case. (ECF No. 1 at 5.) Petitioner's sentiments undermine his claim that he would have taken the plea offer in this case if only defense counsel had more clearly or earlier explained the elements of the crimes charged.

At the evidentiary hearing, defense counsel conceded he was not "real vigorous in insisting that [petitioner] take a plea because [petitioner] was resentful on the basis that he believed [defense counsel had] pressured him the first time, so [counsel] tried to be careful not to

pressure him, left the decision up to him." (ECF No. 11 at 31.)  But counsel is not obligated to "strongly recommend" that a defendant either accept or reject a plea offer.  Turner v. Calderon, 281 F.3d at 881.

Petitioner also argues that he was "thrown under the bus" because defense counsel did not argue on closing before the jury what counsel argued at the preliminary hearing.  (ECF No. 1 at 5.)  However, "a lawyer may properly make a tactical determination of how to run a trial in the face of his client's incomprehension or even explicit disapproval."  Brookhart v. Janis, 384 U.S. 1, 8 (1966).  See also Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006) ("A disagreement with counsel's tactical decisions does not provide the basis for declaring that the representation was constitutionally deficient."), cert. denied, 552 U.S. 833 (2007).)  In addition, because the governing law was unclear and changing, as detailed by both the superior court and the appellate court on petitioner's direct appeal, it was not objectively unreasonable for the superior court to find defense counsel "made the best legal argument and a plausible legal argument."  (ECF No. 11 at 45.)  Petitioner has failed to demonstrate that defense counsel's representation fell outside the wide range of professionally competent assistance.

Finally, petitioner argues that during the evidentiary hearing, his attorney failed to convey petitioner's claims that his decision to go to trial was because he was under the misunderstanding that these two elements of the crime were needed for conviction, not because counsel told petitioner to go to trial.  (ECF No. 1 at 6.)  Such argument is specious.  During closing arguments, petitioner's counsel specifically argued that going into trial, petitioner believed defense counsel had the ability to argue that there was an element of the crime missing, and that if he had been clearly informed of the elements prior to trial, he would have taken the plea offer instead of risking a 25 years-to-life sentence.  (ECF No. 11 at 39-40.)  In any event, claims pertaining only to matters that occurred in the post-conviction review process are not cognizable on federal habeas review.  See Cooper v. Neven, 641 F.3d 322, 331-32 (9th Cir. 2011) (alleged errors during post-conviction evidentiary hearing "are not cognizable for federal habeas review"); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam ) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings.")."

In conclusion, because this court must defer to the state court's credibility and factual findings, and review of the record confirms that the superior court's findings were not objectively unreasonable, petitioner's claim that trial counsel was ineffective during plea negotiations fails because petitioner has not offered clear and convincing evidence to rebut the presumption of correctness, or otherwise shown that the superior court's findings were objectively unreasonable. See 28 U.S.C. § 2254(e)(1); Lambert, 393 F.3d at 977, 978 (stating that presumption of correctness applies to "state court findings of fact made in the course of resolving claims of ineffective assistance of counsel."); see Strickland, 466 U.S. at 687. Thus, the undersigned finds that the state courts did not unreasonably apply clearly established federal law or unreasonably determine the facts in light of the evidence presented.

VII. Conclusion

For all of the above reasons, the undersigned denies petitioner's application for a writ of habeas corpus.

Before petitioner can appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b).

For the reasons set forth above, the undersigned finds that petitioner has not made a showing of a substantial showing of the denial of a constitutional right.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a petition for writ of habeas corpus is denied; and

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

Dated: April 17, 2018

/bass0304.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE